817 So.2d 1009 (2002)
Wilfrid METELLUS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 5D01-1044, 5D01-1249, 5D01-1250, 5D01-1251, 5D01-1253, 5D01-1254.
District Court of Appeal of Florida, Fifth District.
May 31, 2002.
*1010 James B. Gibson, Public Defender, and Meghan Ann Collins, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Wilfrid Metellus appeals from the sentencing orders imposed on re-sentencing. Metellus was re-sentenced pursuant to the trial court's determination that he had failed to testify against one of his criminal associates as agreed to in the plea agreement Metellus entered into with the State.
In this appeal of six consolidated cases, Metellus argues that (1) the trial court erred in vacating his original sentence and re-sentencing him to a longer sentence in violation of his constitutional protection against double jeopardy, and (2) the trial court erred in re-sentencing him after more than 60 days had lapsed since the alleged violation of his plea agreement. After discussing the factual and procedural background of the instant case, we will address each issue in the order previously presented.

Factual And Procedural Background
Metellus, shortly after committing numerous offenses in October 1998, went on *1011 another crime spree, this time with two associates, Jonel Ocer and Tony Elozar. For the sake of brevity and to avoid repetition, we will not chronicle every count in the six informations filed against Metellus. Suffice it to say that his criminal activities literally span the horizon of the Florida Criminal Code and include charges of carrying concealed firearms, possession of drugs, home invasions, robberies, kidnappings with intent to commit felonies with a firearm, aggravated assaults with firearms, and burglaries of dwellings with an occasional assault or battery with a firearm.
Metellus entered into a plea agreement that required him to plead guilty to the first count of each of the six informations. In return, the court would sentence him for each offense concurrently and the prison portion of the sentence would be capped at 30 years. Defense counsel informed the court at the plea proceedings that Metellus "will be required to testify truthfully against any co-defendants who proceed to trial." The prosecutor specifically questioned Metellus at the plea hearing whether Ocer and Elozar were involved with him in the commission of certain crimes, and Metellus admitted their involvement.[1] The trial court accepted Metellus's plea.
Another plea hearing was subsequently held at which time the prosecutor asked whether everything Metellus had said previously about the crimes was "still true" and whether everything Metellus had told the detectives about the crimes was true. Metellus answered affirmatively and agreed that Elozar and Ocer were the same two people who committed the offenses with him. Metellus again promised to testify truthfully and confirmed his understanding of whom he would testify against when he stated, "Um, my deal was that you was gonna make me testify on Tony Elozar." The trial court again accepted Metellus's plea and sentenced him to four sentences of fourteen years DOC and to two sentences of five years DOC. All sentences were to run concurrently.
The prosecutor, having established Metellus's testimony on the record at the plea hearings and secured his commitment to testify truthfully, proceeded with the prosecution of Elozar. Shortly after the ill-fated trial commenced, a harbinger of the misfortune that would soon befall the prosecutor presented itself when Metellus told her that "I know you need me. I want 4 instead of 14." The prosecutor informed Metellus that no further negotiation would take place and that he was about to be called as a witness and sworn to tell the truth. When Metellus was presented to the jury, his initial reluctance to testify was quelled by instruction from the court to answer the prosecutor's questions. Much to the chagrin of the prosecutor, Metellus presented testimony that was contrary to the statements he made when making the plea agreement. Specifically, Metellus testified that Elozar had nothing to do with the offense for which he was being tried. When confronted with his prior statements, Metellus replied that they were "a bunch of lies." Unable to *1012 prove her case despite all of her past efforts to properly secure truthful testimony from Metellus, the luckless prosecutor dismissed the charge against Elozar and watched him go free.
After Metellus reneged on his plea agreement, the State moved to have Metellus's sentence vacated. The motion to vacate was filed more than 60 days after Metellus breached the plea agreement. At the hearing on the motion, defense counsel agreed that Metellus "had not lived up to one of the important parts of the agreement, which was to testify against Mr. Elozar." Metellus informed the court, however, that while waiting to testify during the trial, he had been placed in the same holding cell occupied by Elozar. Reunited once again, Elozar, who apparently was not particularly enamored with Metellus at that time, expressed his displeasure with Metellus's agreement to testify against him by threatening Metellus and his family. The prosecutor, on the other hand, informed the court that upon learning of the brief reunion, she inquired of Metellus if he had experienced any trouble with Elozar and Metellus did not inform her of any problem. She argued that Metellus "has basically come up with a version that that's why he didn't testify truthfully." The prosecutor requested that the sentence be vacated and that the 30-year cap be imposed.
The trial court granted the motion to vacate the sentence and immediately resentenced Metellus to 29 years in place of the 14 year sentences on four counts and to the same 5 year terms on the remaining two counts.[2]
We turn now to the first issue presented whether the trial court re-sentenced Metellus to a longer sentence in violation of the Double Jeopardy Clause.

Double Jeopardy
Metellus argues that the subsequent sentence he received violates the Double Jeopardy Clause of the federal and Florida constitutions. See U.S. Const. amend. V; Art. I, § 9, Fla. Const. The courts generally agree that "jeopardy attaches... on a conditional plea which is accepted on conditions favorable to the defendant," Brown v. State, 367 So.2d 616, 620-21 (Fla.1979) (footnote omitted), and that it is a violation of the double jeopardy prohibition to re-sentence a defendant to a longer term of imprisonment after sentence is imposed. Brown; Troupe v. Rowe, 283 So.2d 857 (Fla.1973); Ruffin v. State, 589 So.2d 403 (Fla. 5th DCA 1991).
In McCoy v. State, 599 So.2d 645 (Fla.1992), the court established a procedure, which has been codified in rule 3.170(g), Florida Rules of Criminal Procedure, whereby the state may move to vacate a plea and sentence. Rule 3.170(g)(2)(C) provides that a plea or sentence may be vacated "if the court finds that there has been substantial noncompliance with the specific terms of the plea agreement."[3] Metellus contends, however, *1013 that this rule does not apply. Specifically, he argues that pursuant to McCoy, the fact he did not testify as the State contemplated did not constitute noncompliance with the plea agreement because the written agreement only required him to testify "truthfully." It did not require him to testify that Elozar had committed the offenses.
In McCoy, the court held that where an agreement calls only for a defendant to testify truthfully without specifying the testimony the state expects to elicit, there is no basis to vacate the plea where the testimony at trial is not what the state expected. The court gave prosecutors guidance, however, on how to secure a plea agreement that may be vacated based on substantial non-compliance by a defendant:
[W]hen entering into a plea agreement, the State must make sure that the specific terms of the agreement are made a part of the plea agreement and the record. In this instance, it would have been adequate if it had been stated, as part of the plea agreement, that McCoy would testify truthfully in any criminal action against her supplier in accordance with identified statements that she had previously given to law enforcement officials.
Id. at 649.
While it is true that the written plea agreement only required Metellus to testify truthfully, Metellus's testimony was proffered at the plea hearings where it was established that "truthfully" meant as Metellus had stated in his account of the events to the police. This fact distinguishes Metellus's case from the facts of McCoy, wherein the defendant's plea agreement was only that she would testify truthfully and there was no clarification made during the plea colloquy of what the testimony would be. Moreover, the court in McCoy noted that "[n]one of the terms in the written plea agreement or statements made during the plea colloquy were violated by McCoy's failure to testify against her supplier." Id. (emphasis added). We conclude that a discussion or proffer of the expected testimony during the plea colloquy, as was done in the instant case, is sufficient and that the testimony need not be included in the written plea agreement.[4] Thus, no violation of the *1014 Double Jeopardy Clause occurred when the trial court re-sentenced Metellus in accordance with rule 3.170(g). Next we determine the timeliness issue.

The Motion was Made Sixty Days After The Breach
Metellus contends that rule 3.170(g)(2)(A) is jurisdictional. Accordingly, Metellus argues that because the State did not file its motion to vacate the sentence within sixty days of the breach, the trial court lacked jurisdiction to entertain the motion and impose a harsher sentence on him. Metellus further argues that lack of jurisdiction cannot be waived by his failure to object at the time he was resentenced. We agree that if rule 3.170(g)(2)(A) is jurisdictional, Metellus's failure to object does not constitute a waiver of the trial court's lack of jurisdiction.[5] Thus the issue we must resolve is whether the sixty-day limit contained in the rule is jurisdictional.
We begin our analysis of this issue by reference to the pertinent provisions of Florida Rule of Criminal Procedure 3.170(g)(2)(A), which states:
(2) Unless otherwise stated at the time the plea is entered:
(A) The state may move to vacate a plea and sentence within 60 days of the defendant's non-compliance with the specific terms of a plea agreement.
(Emphasis supplied). The highlighted provision of the rule clearly indicates that the sixty-day time limit may be changed by consent of the parties and incorporated into the terms of a negotiated plea agreement.[6] The obvious reason for this provision is to allow the defendant and the state more flexibility in negotiating a plea agreement that is conditioned on the defendant's performance of specific provisions. For example, securing from the defendant an agreement for a longer period of time to file a motion under the rule provides the state with more of an incentive to enter into conditional plea agreements because the state is given more time to ensure that the conditions in the agreement are in fact complied with. Modification of the sixty-day time limit may also provide the defendant added flexibility to obtain a more favorable offer from the state by agreeing to an extended time period for the state to file a motion under the rule.
*1015 The provision of the rule which allows modification of the sixty-day time limit is significant to our jurisdictional analysis because the courts have consistently held that jurisdiction, where it does not otherwise exist, may not be conferred on the court by agreement or consent of the parties.[7] Hence if rule 3.170(g)(2)(A) is indeed jurisdictional, the state and the defendant could not agree to a longer period and the provision in the rule would be meaningless. We do not believe that the Florida Supreme Court purposely includes meaningless provisions in the rules of procedure it adopts. Specifically, we do not believe that the court intended the provision that states "unless otherwise stated at the time the plea is entered" to be without meaning and effect. To the contrary, the inclusion of this provision in the rule which allows for modifications to the sixty-day time limit clearly indicates that the rule is not jurisdictional.
Moreover, to conclude that rule 3.170(g)(2)(a) is jurisdictional may provide an incentive to defendants who enter conditional plea agreements to breach the conditions with which they do not want to comply, secure in the knowledge that if the state does not discover the breach and file the motion within the sixty-day time period, they will be forever relieved of their obligation under the agreement. We do not think this was a consequence intended by the court when it adopted the rule. Furthermore, if the rule is held to be jurisdictional, the restrictive sixty-day time limit may act as a disincentive to the state to enter into conditional pleas in light of the fact that the rule specifically provides that the sixty-day period starts to run from the time the defendant commits the breach rather than from the time the state knew or should have known of the breach.
We have discovered two recent decisions, Joslin v. State, 27 Fla. L. Weekly D686, ___ So.2d ___, 2002 WL 440552 (Fla. 2d DCA Mar.22, 2002) and Robie v. State, 807 So.2d 781 (Fla. 2d DCA 2002), that discuss rule 3.170(g)(2)(A). What is noteworthy about these cases is that they include language that could be interpreted as holding that the rule is jurisdictional. However, we find that these decisions are distinguishable from the instant case. In Joslin, and Robie, the defendants entered pleas and requested that they be furloughed for a brief period of time before their incarceration. The trial court told each defendant that if he failed to report to prison on time, he would be subjected to a harsher sentence. Each defendant failed to comply with his report date and each was eventually taken into custody and resentenced by the trial court to a more severe prison sentence. The decisions do not indicate that the state filed a motion pursuant to rule 3.170 and, therefore, the timeliness issue was not addressed. Each defendant subsequently filed post conviction motions alleging that his re-sentence was illegal. In each case, the second district found that the re-sentences violated the double jeopardy clause of the federal and Florida constitutions. Although we find that Joslin and Robie are clearly distinguishable from the instant case, to the *1016 extent that our holding conflicts with those decisions, we certify conflict.
We conclude that rule 3.170(g)(2)(A) is not jurisdictional. If the motion is made within the sixty-day time limit, the trial court may vacate the plea or sentence upon the defendant's breach and proceed to re-sentence the defendant. If the sixty-day limit was not complied with or was not extended by agreement of the parties, because the rule is not jurisdictional, the defendant waives compliance with the time limits of the rule if he or she fails to object at the time of re-sentencing.
AFFIRMED; CONFLICT CERTIFIED.
GRIFFIN and ORFINGER, R.B., JJ., concur.
NOTES
[1] The prosecutor questioned Metellus at the plea hearing, asking, "Mr. Metellus, it's my understanding that you are willing to testify truthfully in any future trials of Mr. Ocer or Mr. Elozar, is that correct?" Metellus answered affirmatively and the prosecutor showed him a transcript and asked whether everything he told Detective Duncan in the transcript was the truth. Again, Metellus answered affirmatively. The prosecutor inquired whether Elozar and Ocer participated in the home invasion and burglary that occurred January 10, and Metellus agreed. As to the home invasion of January 13, Metellus agreed that Ocer and Elozar participated in that offense. The prosecutor showed Metellus a picture of Elozar, and Metellus identified Elozar as the same man who had participated in the robberies with him.
[2] Metellus, through counsel, advised the court that he was not seeking to vacate the plea agreement and did not object to the sentence that was imposed.
[3] The constitutional protection against double jeopardy may be waived pursuant to a bargained-for plea agreement. Melvin v. State, 645 So.2d 448 (Fla.1994); Novaton v. State, 634 So.2d 607 (Fla.1994) (holding that a bargained-for plea waives the right to attack multiple convictions on double jeopardy grounds); Blair v. State, 805 So.2d 873, 878 (Fla. 2d DCA 2001) ("Where a guilty plea is bargained for, double jeopardy claims as to the conviction and sentence are waived.") (citations omitted); Colson v. State, 717 So.2d 554 (Fla. 4th DCA 1998); Johnson v. State, 676 So.2d 1017 (Fla. 5th DCA 1996); Powell v. State, 657 So.2d 37 (Fla. 5th DCA 1995); Bryant v. State, 644 So.2d 513 (Fla. 5th DCA 1994), rev. denied, 654 So.2d 130 (Fla.1995); see also Jones v. State, 711 So.2d 633, 634 (Fla. 1st DCA 1998) ("There was no plea bargain involved here; the double jeopardy violation is apparent from the record; and there is nothing in the record to indicate a waiver. Accordingly, we conclude that appellant has not waived the double jeopardy claim.") (citing Novaton). Thus we conclude that when a defendant enters into a conditional plea agreement that provides for a certain sentence in exchange for compliance by the defendant with specified conditions, double jeopardy is deemed waived pursuant to the agreement and the state may move in accordance with rule 3.170 to vacate the plea and sentence if the agreement is breached by the defendant. The issue in these instances is not whether re-sentence in accordance with the rule violates double jeopardy, but whether the state has complied with the requirements of the rule.
[4] In the similar situation of a plea conditioned upon terms of a substantial assistance agreement, the court in Amador v. State, 732 So.2d 404, 404-05 (Fla. 2d DCA 1999), stated, "In order to ensure that there are no misunderstandings between the parties, the terms of the agreement should be clearly set forth in the contract or discussed at the plea hearing." (Emphasis added). Likewise, in Mason v. State, 646 So.2d 295 (Fla. 5th DCA 1994), this court ruled that a substantial assistance agreement was enforceable, notwithstanding that it was not made a part of the written plea agreement, where the plea colloquy revealed that the plea expressly required compliance with a substantial assistance agreement that had been executed by both parties. This court cited McCoy and stated, "The McCoy court plainly intended that the terms of the substantial assistance agreement be certain and ascertainable as of the time of the plea, not necessarily that they physically be a part of the plea." Id. at 295. The same reasoning would apply to other terms of a plea agreement as long as the terms are clearly stated at the plea colloquy, it is of no import that the terms were not included on the written plea form.
[5] See Harrell v. State, 721 So.2d 1185, 1187 (Fla. 5th DCA 1998) ("The doctrine of waiver cannot be effective when the court lacks jurisdiction over the case itself."); White v. State, 404 So.2d 804, 805 (Fla. 2d DCA 1981) ("It is well settled that defendant cannot confer jurisdiction on the trial court by waiver, acquiescence, estoppel, or consent since jurisdiction is established solely by general law.").
[6] In Garcia v. State, 722 So.2d 905 (Fla. 3d DCA 1998), the court explained:

A plea agreement is a contract and the rules of contract law are applicable to plea agreements. State v. Frazier, 697 So.2d 944 (Fla. 3d DCA 1997). A party may waive any right to which he is legally entitled under the Constitution, a statute, or a contract. State, Department of Health & Rehabilitative Services v. E.D.S. Federal Corporation, 631 So.2d 353 (Fla. 1st DCA 1994). A defendant will not be relieved of an obligation that was included as a specific component of a plea agreement that was bargained for and voluntarily entered into by defendant. Allen v. State, 642 So.2d 815 (Fla. 1st DCA 1994).
722 So.2d at 907; see also A.D.W. v. State, 777 So.2d 1101, 1104 (Fla. 2d DCA 2001) (acknowledging that "plea agreements are controlled by contract law"); State v. Frazier, 697 So.2d 944 (Fla. 3d DCA 1997) (holding that the rules of contract law are applicable to plea agreements).
[7] Harrell, 721 So.2d at 1187 (holding that lack of jurisdiction cannot be cured by consent); Akins v. State, 691 So.2d 587, 589 (Fla. 1st DCA 1997) (noting that "jurisdiction cannot be conferred on the court by agreement of the parties") (citation omitted); Evans v. State, 647 So.2d 180, 180 (Fla. 1st DCA 1994) ("The parties cannot, even by stipulation, confer jurisdiction upon a court where no jurisdiction exists.") (citations omitted); White; Radford v. State, 360 So.2d 1303 (Fla. 2d DCA 1978); Sclafani v. Dade County, 323 So.2d 675 (Fla. 3d DCA 1975); Pope v. State, 268 So.2d 173 (Fla. 2d DCA 1972), cert. discharged, 283 So.2d 99 (Fla.1973).