501 So.2d 158 (1987)
James Farrell JOHNSON, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-2456.
District Court of Appeal of Florida, Third District.
January 23, 1987.
Bennett H. Brummer, Public Defender, and N. Joseph Durant, Jr., Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., for appellee.
*159 Before SCHWARTZ, C.J., and DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
"The quality of mercy... becomes The throned monarch better than his crown."
W. Shakespeare, The Merchant of Venice IV.i.

I.

The Bottom Falls Out in the Top of the Ninth
July 8, 1985, was not a good day for James F. Johnson; July 9 was even worse.
On the 8th, Johnson, having received a one-week reprieve from reporting on July 1, was scheduled to begin serving a 364-day sentence in the county jail. This sentence was "imposed" pursuant to a plea agreement between the State and the defendant, the terms of which were accurately set forth by Judge Gross:
"It is my understanding, sir, you will be entering a plea of guilty and adjudicated guilty. This is a third-degree felony. You'll be sentenced to five years in the State Penitentiary. However, you have a report date of July 1, 1985 to surrender in open court to begin your sentence. If you surrender on July 1, 1985, your sentence shall be mitigated to 364 days in the Dade County Jail, which would be a straight time sentence, no good time, no gain time, no credit time served, no work furlough. Again, if you do not appear on July 1, 1985, you are pleading to five years in the State Penitentiary as soon as you are picked up. Regardless of where you may be, your sentence is five years in the State Penitentiary.
"If you appear on July 1, 1985 to begin your five year sentence, your shall [sic] sentence shall be mitigated on that day to 364 days in the Dade County Jail, straight time, no good time, no gain time, no credit time served and no work furlough."[1]
On July 1, the defendant dutifully appeared before Judge Mastos, who was substituting for Judge Gross. Because of a death in the defendant's family, he requested, and Judge Mastos granted, an extension of time for his surrender to the following Monday, July 8.
Johnson failed to appear in court on the 8th. On the 9th, when the defendant appeared without counsel before Judge Mastos, the issue of the defendant's willfulness in failing to appear on the 8th had apparently been predetermined, but because the defendant was silenced, the record of that day's proceedings sheds no light on why he failed to appear the day before:
"THE DEFENDANT: I was here to start my 364 days yesterday.
"THE COURT: Oh, yes. We got word you were out there harassing somebody.
"What was the sentence Judge Gross gave you?
"MR. GONZALEZ [Assistant State Attorney]: Five years with a mitigation if he showed up on time. He came in here last week. You gave him an extra week, and instead of coming in, he went out and harassed the victim.
"THE COURT: Okay. Five years. Five years in State Pen.
"Take him away.
"THE DEFENDANT: You don't understand.
"THE COURT: I understand. You were harassing the victim.
"THE DEFENDANT: It wasn't the victim of the crime that I got sentenced for, Judge.
"THE COURT: I understand that.[2]

*160 "Five years.
"THE DEFENDANT: Judge 
"THE COURT: Look, sir, you were late. You didn't show up yesterday.
"THE DEFENDANT: I had an excuse and you're not giving me a chance.
"THE COURT: Tell it to the people up in Raiford when they're booking you in. That was Judge Gross' sentence. It is a legal sentence. Five years.
"You know, people don't seem to realize. You play in Gross and Mastos' courtroom and you're playing in the major leagues. A guy was told to be here. The record will reflect he failed to appear. The record will also reflect the victim called my office and indicated he was harassing the victim.
"Judge Gross' sentence of five years stands. He is not entitled to mitigation because he didn't meet the condition of Judge Gross' mitigation."

II.

There Is No Joy in Mudville
Anyone who is the least bit familiar with the folklore of baseball has come to know that getting sent "up to the major leagues" is the dream of all of those aspiring young ballplayers who ride the buses and stay in second-rate hotels while learning their trade playing in that vast group of graded farm teams known as the minor leagues. And, even those with the most casual acquaintance with baseball appreciate that, conversely, getting sent "down from the majors" is the dread of all those who have had their names appear on the roster of a major league team for however brief a time.[3] As far as we can determine, the present case is the first recorded instance of a young man being sent "up from the majors," and, as the present case demonstrates, movement in that direction is hardly one that the youth of America  or, for that matter, anyone  would wish for.

III.

The Umpire Strikes Back
A short time after being sent up from the majors and having arrived at the prison at Lake Butler, Florida, the defendant, representing himself, filed a motion to enforce the plea bargain of 364 days in the county jail.[4] It was from this motion that we learn for the first time that, according to the defendant:
"En route to the Dade County Courthouse to surrender myself on 8 July '85, I was stopped by a Metro-Dade police officer for a driving infraction, and taken into custody for same. I informed the officer that I was to surrender myself and that I was on my way there. He said to me, `This is the express lane. I'm taking you to jail right now,' or words to that effect.
"As you will note on the arrest report, the time indicated as the time of arrest is 8:30 A.M. So, I was actually in custody at the time I was supposed to have surrendered myself to the court."[5]
The motion was denied by Judge Gross.

IV.

Safe at Home
This case is governed by the decision of our sister court in Lee v. State, 471 So.2d 195 (Fla. 4th DCA 1985). There the court most emphatically decided that where timely appearance for sentencing is made a condition of a plea agreement, a non-willful *161 failure to appear will not vitiate the agreement and permit the trial court to impose some greater sentence. The opinion in Lee is short enough to be set forth in its entirety:
"This is an appeal from a sentence entered upon a conditional plea agreement approved by the court. We reverse and remand with directions that the appellant be sentenced in accord with the plea agreement previously entered, without consideration as to the elements of the agreement pertaining to appellant's failure to timely appear for sentencing or to his arrest pending sentence.
"We find no evidence to support a finding that the appellant willfully failed to appear for his sentencing hearing or that he committed another crime while on personal recognizance release pending sentencing. To the contrary, the record reflects only evidence of an accidental car breakdown as the cause of appellant's late appearance for sentencing, and a voluntary dismissal by the state of the charges for which he was arrested and that he claimed arose out of a misunderstanding with his grandfather.
"In addition, we question, but do not decide, whether a substantial number of years may constitutionally be added to a defendant's sentence to penalize him for being arrested or upon a finding that there was probable cause for such arrest. We caution trial courts to avoid plea agreements of this nature."
Id. at 195-96.
If, indeed, the State contends  and it made no such contention in the trial court at any time  that the defendant's non-appearance was willful, then it is free to prosecute the defendant under Section 843.15(1)(a), Florida Statutes (1985), for his failure to appear at sentencing. Williams v. State, 500 So.2d 501 (Fla. 1986).[6] But, on the record before us, the defendant's failure to appear was, without dispute, beyond his control, and only in the most merciless and draconian system of justice could such failure result in a forfeiture of his bargained-for sentence of 364 days. Ours is not such a system.
Accordingly, the trial court is directed to reduce the defendant's sentence to 364 days and to order him discharged from custody forthwith inasmuch as his proper sentence has already been served.[7] No motion for rehearing will be entertained, and the mandate of this court will be issued with the filing of this opinion.
Sentence reversed.
SCHWARTZ, Chief Judge, concurring.
I concur in the reversal of the defendant's sentence on the authority of Lee v. State, 471 So.2d 195 (Fla. 4th DCA 1985).
NOTES
[1] After setting forth the understanding on June 17, Judge Gross accepted the plea and sentenced the defendant to five years. However, the sentencing scoresheet appended to the judgment and sentence notes that the recommended guideline sentence is 3 1/2 to 4 1/2 years, that the sentence imposed is 364 days, and states a reason for the downward departure.
[2] Other than this colloquy, there is nothing in the record to shed light on this "harassing the victim" matter. Quite obviously, nonharassment of the "victim," whoever that might have been, was not a condition of the plea agreement. Had harassment occurred in fact, the State was free to charge the defendant with tampering with or retaliation against a witness. See § 914.22-23, Fla. Stat. (1985).
[3] See, e.g., T. Boswell, How Life Imitates the World Series 4 (1983); Asinof, "The Rookie," in Fielder's Choice 256 (J. Holtzman ed. 19__); Norris, "Voo and Doo," in Fielder's Choice 289.
[4] The defendant wrote it on a form entitled "Motion for Mitigation and Reduction of Sentence."
[5] The State says that the defendant told an inconsistent story concerning his arrest. While it does appear that on July 24, in the absence of the defendant, an assistant public defender and the defendant's former wife appeared before Judge Gross and indicated that the defendant's arrest resulted from the former wife's father's call to the police  apparently arising from some domestic problem  a story that is not inconsistent with the defendant's being arrested while driving to court, nor one to which the defendant was privy or for the telling of which he is responsible. Moreover, if the defendant was prevented from being in court by virtue of being arrested, the reason for the arrest is immaterial.
[6] Even if Johnson's failure to appear had been willful, a departure from the recommended guideline sentence of 3 1/2 to 4 1/2 years, even with his acquiescence, is not permitted under Williams v. State, failure to appear for sentencing does not constitute clear and convincing reason for departure from guidelines).
[7] Due to an alleged clerical error in the Office of the Public Defender, no notice of appeal was timely filed. On October 30, 1985, the public defender filed a petition for habeas corpus relief seeking a belated appeal. This petition was granted. On January 27, 1986, again on March 13, and each month thereafter through June, the public defender, with the attorney general's agreement to all but the last motion, moved for an extension of time to file the defendant's brief. These motions were granted with a caveat on the order granting the last motion that no further extensions would be allowed. When no brief was filed by July 11, 1986, the appeal was dismissed for failure of the appellant to comply with the rules of appellate procedure. On September 29, 1986, the public defender moved to reinstate the appeal, at the same time filing a brief on the defendant's behalf. On October 1, 1986, the appeal was reinstated. Notwithstanding that the public defender was now aware that the defendant had served more than 364 days, no motion to expedite the appeal was forthcoming. Our decision has been expedited.