877 So.2d 874 (2004)
Emile McFORD, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-1537.
District Court of Appeal of Florida, Third District.
July 14, 2004.
*875 Bennett H. Brummer, Public Defender, and Billie Jan Goldstein, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, Consuelo Maingot, Assistant Attorney General, and Venus Zilieris, Certified Legal Intern, for appellee.
Before SCHWARTZ, C.J., and SHEVIN and SHEPHERD, JJ.
SHEPHERD, J.
Emile McFord appeals a final judgment of conviction and sentence for violating a substantial assistance plea agreement. We affirm.
In April 2001, McFord was charged with drug trafficking in violation of § 893.135(1)(b)(2), Fla. Stat. (2000). In September of that year, McFord entered into a plea agreement to supply the State with "substantial assistance," see § 893.135(4), Fla. Stat. (2000), in undercover drug investigations in exchange for the State's agreement to waive the applicable fifteen-year minimum mandatory provision of his sentence. Other conditions of the agreement were that McFord would "refrain from the commission of any crime" while on release pursuant to the agreement, and also provide to the authorities "[any] tangible items which are in any way related to any criminal acts." McFord acknowledged that "[t]he commission by the Defendant of any crime ... shall be a violation of [the] agreement," resulting in reinstatement of the minimum mandatory provision and a sentence of thirty years in state prison. The plea agreement also required the Defendant to "make daily telephone or personal contact" with the detective assigned to his case.
At the plea colloquy, the trial court reviewed the plea agreement with the Defendant paragraph by paragraph. The court impressed upon the Defendant that not only would he be assisting the police in further drug investigations, but also *876 stressed the condition that the commission of any further crime would constitute a violation of the agreement. Among the several admonitions of the trial judge to the Defendant were the following:
THE COURT: Paragraph 9, the Defendant agrees to refrain from the commission of any crimes during the pendency of this case and if the Defendant cooperates (sic) the commission of any felony inside or outside of Miami-Dade County he shall be in violation of this agreement and the Defendant shall be sentenced pursuant to paragraph 13, I will get that in a moment ...
While you're out there, if you commit any kind of crime, it could be driving under the influence, possessing marijuana, [even a] misdemeanor amount, drinking in public, or any number of misdemeanors, or any felony for that matter, then you will suffer the consequences of your violation of this agreement ...
Do you understand that?
THE DEFENDANT: Yes, sir.
* * *
[THE COURT]: Paragraph 13, if the Defendant, this is the critical one you need to be aware of because it goes back to what we are talking about, you get arrested for anything, you fail to do what you are required to do under this agreement... if you fall on your own sword because you don't follow through with what you're supposed to ... you get rearrested for something while you're trying to help, then you get thirty years with a fifteen year minimum mandatory.
* * *
If its alleged that you have violated the terms and conditions of this plea agreement, you will be entitled to a hearing because I'll not just violate you on the word of the prosecutor or officer, I would conduct a formal hearing and receive evidence, and it's from that I will determine if you are in compliance or violation.
Do you understand that?
THE DEFENDANT: Yes, sir.
Approximately one year after the plea hearing, the detective involved in handling the Defendant's case received a tip from the Miami-Dade County Robbery Bureau that Defendant was dealing in narcotics. After some surveillance on Defendant's house and other investigation, the detective approached the Defendant and asked whether he had anything concealed in his home. The Defendant admitted that he had cocaine. A search of Defendant's bedroom, done with Defendant's consent and in his presence, revealed the existence of "numerous baggies, crack pipes, cocaine, marijuana ... a cell phone, battery and electronic scale." The Defendant was re-arrested, and the State moved to vacate the plea pursuant to Fla. R.Crim. P. 3.170(g).
At the hearing on the motion, the Defendant admitted to the possession of cocaine, a violation of Florida law. Nevertheless, the Defendant urged an antithetical explanation, i.e., that his possession was "out of necessity" to mask his undercover work. Yet, not once prior to coming into possession of the illegal substances, or at any time thereafter, did Defendant tell his supervisor that he had these items, despite daily required communications between them. The Defendant likewise ignored a provision of the plea agreement that required him to provide for "review or duplication any and all ... tangible items which are in any way related to any criminal acts." The trial court held that the Defendant violated the terms of his agreement *877 and sentenced him to thirty years with a fifteen-year minimum mandatory sentence, with credit for time served pursuant to the agreement.
McFord contends on appeal that a proper interpretation of the plea agreement requires that the State either introduce evidence of a conviction or, at a minimum, prove that he committed a crime beyond a reasonable doubt at the 3.170(g) non-compliance hearing before he can be held to have violated the agreement. In support of this argument, he urges that the language of the agreement which states that "[t]he commission by the Defendant of any crime ... shall be a violation of [the] agreement," is ambiguous because it does not expressly disclaim the requirement of a conviction. He then urges that this purported ambiguity must be construed against the State as the drafter of the agreement. We reject this argument. The agreement expressly states that it is the commission and not the conviction of a crime that would constitute a violation of the agreement. But if there was any doubt about the interpretation and meaning of the plea agreement, the trial judge made the terms of the agreement crystal clear during the plea colloquy. Specific clarifications of a plea agreement made during the course of a plea colloquy become part of the agreement for purposes of its enforcement. Metellus v. State, 817 So.2d 1009 (Fla. 5th DCA 2002); Deramus v. State, 652 So.2d 1245 (Fla. 5th DCA 1995).
Defendants who seek to avail themselves of the salutary upside of a substantial plea agreement do not have the right to make unilateral modifications to the agreement. See State v. Frazier, 697 So.2d 944 (Fla. 3d DCA 1997) (a party who reaps the benefits of the agreement must be held to its detriments). We decline McFord's invitation to do so here by engrafting an after-the-fact "necessity" exception into the plea agreement. As the trial court told the Defendant at the plea colloquy, "the keys to the prison ... [are] in your hands. It's up to you what you do out there." His obligation was clear. Sadly, he squandered the break of a lifetime.
Affirmed.