977 So.2d 740 (2008)
Roger Curtis NEELD, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-1731.
District Court of Appeal of Florida, Second District.
March 26, 2008.
Roger Curtis Neeld, pro se.
Bill McCollum, Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Roger Curtis Neeld appeals his judgment for felony petit theft (third or subsequent offense), see § 812.014(3)(c), Fla. Stat. (2004), and sentence' of three years' imprisonment. The sentence was imposed after Mr. Neeld allegedly violated the terms of a deferred sentencing plea agreement. We reverse the sentence and remand for additional proceedings because the trial court did not require the State to present evidence that Mr. Neeld violated the terms of his plea agreement.
This opinion and the opinion issued simultaneously in Henson v. State, No. 2D06-3575, 977 So.2d 736, 2008 WL 782883 (Fla. 2d DCA Mar.26, 2008), both involve a plea agreement that occurs with some regularity in the Sixth Judicial Circuit and perhaps elsewhere. The plea agreement allows the defendant to be released from jail or remain at liberty pending his or her sentencing hearing under a condition that the defendant behave during this period. The agreement is not reduced to writing, and its oral pronouncement at the plea hearing varies. Sometimes, as in Henson, the defendant is told not to get into "trouble." Other times the defendant is told *741 not to get "arrested." In this case, Mr. Neeld promised that he would not "commit any new crime" during this period. This agreement is similar to a Quarterman[1] plea agreement or to the usual conditions of pretrial release. As discussed below, however, we conclude that the enforcement of this deferred sentencing plea agreement requires proceedings somewhat more extensive than those typically required to enforce a Quarterman plea agreement. We are hesitant to create procedural impediments to plea agreements that permit a furlough prior to deferred sentencing for defendants who can reasonably be expected to return for sentencing and not commit new offenses while on furlough. On the other hand, the procedures currently used in the Sixth Judicial Circuit appear more streamlined than due process may permit.

I. THE FACTS IN THIS CASE
Mr. Neeld attempted to shoplift a fishing reel. He was apprehended at the store and charged with felony petit theft because he had a prior record of shoplifting. He entered into a written negotiated plea agreement in which he agreed to plead guilty to the charge in exchange for a sentence of 364 days in county jail. The written agreement states merely that he will receive "364 days jail  delayed sentence." The written agreement contains no information about when the sentencing hearing will be held or what the consequences might be for any misconduct by Mr. Neeld in the period between the plea hearing and the sentencing hearing.
At the conclusion of the plea hearing on November 7, 2005, the trial judge stated:
If the defendant fails to appear for court on Thursday morning, December 8, 2005, at 8:30 a.m., in this courtroom or if the defendant commits any new crime between now and that court date, the sentence stated in the plea agreement would not be binding on the Court and the Court could sentence the defendant to any lawful sentence in the Court's discretion. Do you understand that, sir?
Mr. Neeld responded that he understood and agreed to these conditions.
Mr. Neeld reported for sentencing at 8:30 a.m. on December 8, 2005. Unfortunately, he did so with the assistance of the sheriff because he had been arrested on November 10, 2005, and charged with shoplifting a pair of shoes and a jacket at a thrift store. The trial court ordered that he receive a psychological evaluation and did not sentence Mr. Neeld at that time. Although our record does not contain all of the trial court records relating to the new charges, it is clear that Mr. Neeld's defense counsel in this case was also appointed to represent him to defend against the new charge.
The court scheduled sentencing in this case and a pretrial conference on the new charge for January 17, 2006. Just prior to that date, Mr. Neeld's counsel filed a motion to withdraw the plea in the first case, alleging that his client was under the influence of medication at the plea hearing. Mr. Neeld filed a pro se document seeking in part to discharge his counsel.
At the hearing on January 17, the court first considered Mr. Neeld's pro se motion to discharge counsel. After listening to Mr. Neeld's reasons for seeking discharge, the court concluded there was no evidence of ineffective representation and asked Mr. *742 Neeld if he wanted to persist in the request to remove counsel in order to proceed pro se. Despite extensive discussion between the court and Mr. Neeld attempting to determine whether Mr. Neeld wanted to proceed pro se, Mr. Neeld avoided making an unequivocal request to represent himself. The court thus denied the motion to discharge counsel and proceeded to consider the motion to withdraw plea. At the conclusion of the hearing, the court took the motion to withdraw plea under advisement. With the consent of the parties, it set the newer case for trial and this case for sentencing on March 9, 2006.
At the end of January, the trial court entered an order denying the motion to withdraw plea. Thereafter, Mr. Neeld filed some lengthy handwritten "emergency" motions seeking a pretrial, hearing, another Nelson[2] hearing, a Faretta[3] hearing, and a hearing on the "noncompliance" issue. The motions suggest that Mr. Neeld is bright, educated, somewhat familiar with legal procedures, but laboring under the pressures of some emotional difficulties.[4]
On March 9, 2006, both the prosecutor and defense attorney suggested the court consider sentencing in the first case prior to a trial in the second. When the court asked whether there was lawful cause not to proceed with sentencing, Mr. Neeld interjected. He asserted specifically:
[T]here's no factual basis to it. I didn't commit a new offense, and it hasn't been established that I have, an arrest alone, as I explained in my motion, shouldn't be sufficient grounds to trigger a violation of non-compliance because I didn't willfully and substantially violate anything. I didn't commit a new offense.
Initially, the court considered proceeding with the scheduled trial in the latter case before sentencing Mr. Neeld in the former, thus avoiding the issue raised by Mr. Neeld. Then, however, the Nelson and Faretta issue arose again. The court passed the case and recalled it later in the day, at which time the court made extensive inquiry of Mr. Neeld pursuant to Nelson and Faretta. The court again determined there was no basis shown to discharge counsel based upon ineffective assistance and indicated it was going to proceed with sentencing in the first case, citing as authority for this decision Quarterman v. State, 527 So.2d 1380 (Fla. 1988), and McFord v. State, 877 So.2d 874 (Fla. 3d DCA 2004). The court provided Mr. Neeld the option of proceeding pro se with the sentencing, which Mr. Neeld rejected. After hearing argument, the trial court concluded that the arrest affidavit in the second case was proof that Mr. Neeld had committed a new offense and violated the plea agreement, arid thus the court sentenced Mr. Neeld to three years in prison in this case.
The court then provided Mr. Neeld the option of proceeding pro se in the second case, which Mr. Neeld accepted. The trial in the second case was continued with Mr. Neeld's approval. Our record does not reveal the disposition of the subsequent offense.
Mr. Neeld has represented himself in this direct appeal. He continues to argue that the court could not determine that he had violated the plea agreement without *743 evidence that he committed a new offense. We conclude that he is correct.
II. THIS AGREEMENT IS NOT A QUARTERMAN AGREEMENT, AND IT IS NOT COMPARABLE TO A CONDITION OF PRETRIAL RELEASE
For more than twenty years, and particularly since the practice was approved by the Florida Supreme Court in Quarterman, 527 So.2d 1380, trial courts in Florida have been' granting furloughs between the plea hearing and the sentencing hearing for defendants who can reasonably be expected to obey the law while released and can be relied upon to voluntarily appear for sentencing. Such an arrangement can be beneficial to the defendant who is preparing to go to prison, and it can also be cost-effective for a county that has limited space in its local jail when a period of time must elapse between the plea and the sentence.
The plea agreement under which the defendant is released is essentially a civil contract. In consideration for the privilege to remain free, the defendant agrees that if he does not appear for sentencing at the agreed upon time and place, the trial court can sentence the defendant to any lawful sentence even if it is a sentence in excess of the sentence specified in the negotiated plea agreement. Under the original sentencing guidelines, such an agreement required the defendant to agree that he or she would allow the judge to impose an upward departure sentence based on the defendant's failure to appear for sentencing. This practice was approved in Quarterman and thus the agreement became known as a Quarterman agreement. See, e.g., Boisvert v. State, 693 So.2d 652, 653 (Fla. 5th DCA 1997).
With the enactment of the Criminal Punishment Code, the concept of an "upward departure" sentence effectively disappeared. See § 921.0024(2), Fla. Stat. (2004). A Quarterman agreement was thus no longer an agreement to permit an upward departure sentence; the defendant merely agreed to a specific sentence with the caveat that the trial court could impose any greater lawful sentence if he or she did not appear. The first portion of Mr. Neeld's oral agreement with the trial court is a classic Quarterman agreement.[5]
*744 If a defendant does not fulfill a Quarterman agreement, his or her failure to appear is obvious. At the time and place of sentencing, when the case is called, the defendant is not present. This occurs in the same court of record where the contract was created. In many respects, the failure to appear is comparable to an act in direct contempt of court. See, e.g., Fla. R.Crim. P. 3.830. When the defendant does eventually appear before the court for sentencing, the State may often have no need to prove anything. The trial court can merely recite the facts of record that the defendant entered into the agreement and did not appear as promised and can then ask the defendant to show cause why he or she should not be sentenced to any lawful sentence. See, e.g., Haynes v. State, 944 So.2d 417 (Fla. 5th DCA 2006) (discussing procedure for direct criminal contempt when witness refuses to answer question despite express order from court to do so); Martinez v. State, 799 So.2d 313 (Fla. 2d DCA 2001) (discussing proof required to establish direct criminal contempt for subpoenaed witness's failure to appear). Unless the defendant has some reasonable explanation or justification for the failure to appear, the trial court can use its discretion to impose an appropriate, lawful sentence.
In contrast, when a defendant agrees to stay out of "trouble" or avoid arrest or conviction in exchange for a furlough between the plea hearing and the sentencing hearing, the act that is a breach of contract does not occur in a public courtroom. Such an action is more comparable to an act of indirect criminal contempt. See Fla. R.Crim. P. 3.840. Just as an adjudication of indirect criminal contempt requires more notice, proof, and due process, see, e.g., Gidden v. State, 613 So.2d 457 (Fla. 1993), we conclude that this type of plea agreement requires proof by the State that the defendant has breached the contract.[6]
When a pretrial' detainee is released on his or her own recognizance, section 903.047(1)(a), Florida Statutes (2004), requires that the release is conditioned upon the defendant refraining from criminal activity. Section 903.0471 provides that a court may, on its own motion, revoke pretrial release and order pretrial detention if the court finds probable cause to believe that the defendant committed a new crime while on pretrial release.[7] Thus the probable cause necessary to support the new charge is sufficient to also revoke the pretrial release on the prior charge. Although this condition is similar to the conditions of Mr. Neeld's plea agreement, the consequences are far different. If a person violates a pretrial release agreement, the penalty for violation is merely loss of freedom prior to trial. By contrast, in this case, Mr. Neeld's sentence was increased by two years of imprisonment, and the act that was the violation, if proven, could result in a consecutive sentence of five years' imprisonment. Thus, because the loss of liberty associated with Mr. Neeld's agreement is greater than the loss associated with a pretrial release agreement, one *745 would expect that the due process required would also be greater.
III. THIS TYPE OF PLEA AGREEMENT REQUIRES A HEARING SIMILAR TO THE HEARING PROVIDED ON VIOLATION OF PROBATION
Unless a defendant like Mr. Neeld admits that he has breached the terms of his plea agreement, we conclude that the circuit court cannot declare that the defendant violated the terms of his plea agreement in the absence of competent, substantial evidence to support that finding. Cf. Mullin v. State, 571 So.2d 1382 (Fla. 3d DCA 1990) (reversing trial court's finding that defendant violated terms of plea agreement because insufficient evidence was presented to support the finding); see also State v. Roberson, 118 Wash.App. 151, 74 P.3d 1208 (2003) (stating that an evidentiary hearing is required to establish breach of plea agreement); United States v. Simmons, 537 F.2d 1260, 1262 (4th Cir.1976) ("There would be manifest impropriety in permitting the government, without satisfying a judge that the evidence proves that a defendant broke his promise, to escape from the obligation the government undertook in the plea bargain."); United States v. Verrusio, 803 F.2d 885 (7th Cir.1986). Although the trial court relied upon McFord v. State, 877 So.2d 874 (Fla. 3d DCA 2004), in deciding to proceed with sentencing in this case without such proof, McFord is distinguishable because the defendant in McFord admitted violating his plea agreement by committing new crimes.
Although proof of a violation of the plea agreement is required, we conclude that the State need only present evidence establishing the breach by the preponderance of the evidence. This is the proof generally required to prove a violation of probation. See, e.g., Bowser v. State, 937 So.2d 1270 (Fla. 2d DCA 2006); Robinson v. State, 907 So.2d 1284 (Fla. 2d DCA 2005). The contract between Mr. Neeld and the State, was similar to the promises exchanged for the privilege of probation. Further, the plea agreement between Mr. Neeld and the State was not conditioned on a formal "conviction" for a new offense but, like the standard condition of probation, was conditioned on the requirement that Mr. Neeld not commit any new crime. Thus, it may not be necessary for the sentencing court to wait until the new criminal charge has been resolved if the State is willing to establish the offense in a manner similar to that in which it proves a new offense as a violation of probation.
We therefore reverse Mr. Neeld's sentence and remand for further proceedings. On remand, the court may hold an evidentiary hearing and may again impose a sentence greater than 364 days in county jail if the State is able to establish that Mr. Neeld committed an offense in violation of his plea agreement.
Reversed and remanded.
FULMER and CASANUEVA, JJ., Concur.
NOTES
[1] Quarterman v. State, 527 So.2d 1380 (Fla. 1988) (affirming the enforcement of a plea agreement that provided for the release and liberty of the defendant between entry of plea and sentencing but permitted an upward departure sentence if the defendant failed to appear for sentencing).
[2] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).
[3] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[4] It is noteworthy that Mr. Neeld has previously had success in this court challenging an earlier judgment for felony petit theft on the ground that the trial court did not provide an adequate Faretta hearing. Neeld v. State, 729 So.2d 961 (Fla. 2d DCA 1999).
[5] Given the complexity of these agreements, it may be useful to incorporate them into a written plea agreement. By way of example, the written plea agreement currently used in Seminole County contains the following language at the end of the agreement:

If I am not in custody, I acknowledge that part of the plea agreement in this case includes my continued release pending sentencing on bond, pretrial release or release on recognizance. I understand that this portion of the plea agreement is conditioned upon the following requirements:
(1) If a presentence investigation has been ordered, I must appear at the Department of Corrections office as directed by the court and schedule a presentence investigation not later than the first business day following the entry of my plea.
(2) I must obey the order of the court requiring me to undergo drug or alcohol screening or for other evaluation if such an order has been made in my case.
(3) I must appear on time for all appointments with the assigned probation officer and not be under the influence of any illegal drugs or alcohol.
(4) I must appear in court on time for sentencing and not be under the influence of any illegal drugs or alcohol.
I realize that this agreement will be provisionally accepted upon entry of my plea and is subject to being accepted or rejected by the Judge at any time prior to the sentence being imposed, and if it is rejected for any reason other than for a breach of this agreement, I may withdraw my plea and go to trial.
I acknowledge receipt of a copy of the notice for my sentencing date. I understand and agree that if I fail to comply with any of the conditions set forth above I will have breached my plea agreement. In that event, I will not be allowed to withdraw my plea and the Judge may sentence me to any sentence authorized by law for the offense(s) to which I have pled.
[6] Notably, this case does not involve a plea agreement to stay out of "trouble" or avoid "arrest." Thus, we have no occasion to determine whether such an agreement is enforceable and under what circumstances. "Trouble" might be a rather ambiguous standard. "Arrest" is an action by a police officer based on that officer's evaluation of probable cause, not a willful action of the defendant.
[7] The Florida Supreme Court held this statute constitutional in Parker v. State, 843 So.2d 871 (Fla.2003).