CASANUEVA, Judge.
 

 Gary Ingmire, Jr., appeals his sentence of fifteen years in the Department of Corrections, alleging the trial court erred in concluding that he willfully failed to appear for sentencing pursuant to a plea agreement for which he was to receive a probationary sentence. We agree and reverse.
 

 Facts
 

 The State charged Mr. Ingmire with grand theft in the amount of $20,000 or more and scheming to defraud. In April 2007, he entered into a plea agreement with the State that was approved by the trial court. In return for a plea to the grand theft charge, the other charge would be dismissed. Additionally, he was to provide an initial payment of $10,800 towards a total restitution amount of $77,790.50, and he would be placed on probation for a term of ten years. The written plea agreement contained an express provision that if Mr. Ingmire failed to appear at his scheduled sentencing, he would not be permitted to withdraw his plea and the trial
 
 *1280
 
 court could then impose any lawful sentence for his offense.
 

 After some delay, Mr. Ingmire presented a check in the amount of $8000, an amount less than that agreed upon but which was acceptable to the State because it exceeded the minimum requested by the victim. The written plea was modified to reflect this change in amount. The trial court set sentencing for June 4 and reminded Mr. Ingmire that his plea agreement required his appearance on that date. He appeared on that date but indicated he wished to obtain counsel to represent him during sentencing.
 
 [1]
 
 Consequently, the trial court rescheduled sentencing to June 27. Mr. Ingmire did not appear on June 27 but later turned himself in to law enforcement.
 

 At the subsequent sentencing hearing, the State contended that Mr. Ingmire’s failure to appear was willful and requested that the trial court impose a greater sentence than contemplated by the plea agreement. The trial court received testimony from four witnesses, three on Mr. Ingmire’s behalf, on the issue of whether his failure to appear at sentencing was willful.
 

 Larry Ingmire, Mr. Ingmire’s uncle, testified that he had misread the date and advised his nephew to appear on June 28 rather than the correct date, June 27. Larry Ingmire drove Mr. Ingmire to the courthouse on June 28 at which time a bailiff informed Mr. Ingmire that his hearing had been scheduled for the prior day. While at the courthouse, Mr. Ingmire also learned that no arrest warrant had yet been issued. When Larry Ingmire discovered he had misread his nephew’s documents, he exclaimed, “Oh my gosh, what did I do,” and Mr. Ingmire immediately telephoned his bail bondsman for instructions. Larry Ingmire also testified that he learned shortly after the incident that he required reading glasses.
 

 Mr. Ingmire’s bail bondsman, Jack Cochran, testified next. Mr. Cochran verified he received a call from Mr. Ingmire indicating that he was at the courthouse but realized he was to have been there the previous day. Mr. Ingmire then came to Mr. Cochran’s office repeating that he missed his court appearance and informing him that there was no outstanding warrant for his arrest. In response, Mr. Cochran told him that he should come back in a couple of days because, by that time, an arrest warrant should have been issued. Mr. Ingmire subsequently called Mr. Cochran every day and, in turn, Mr. Cochran called the jail to determine if a warrant had yet been issued. Mr. Ingmire voluntarily turned himself in to the sheriffs office when the warrant finally issued. Records reflect that he was not booked until July 13.
 

 Mr. Ingmire testified on his own behalf confirming that he had paid $8000 toward restitution and, more important, that he did not intentionally miss his scheduled court date. He claimed that his failure to timely appear was through his own human error. But, he did come to the courthouse a day late at which time he spoke to a female bailiff. Learning of his error, he went immediately to his bail bondsman’s office to seek his advice which was to turn himself in when the warrant issued. As a further sign of good faith performance, Mr. Ingmire told the court that he possessed an additional $2100 to pay toward restitution, that he had a present job offer to work in his uncle’s carpet shop facilitating his ability to continue paying on his restitution obligation, and that he had already spent 104 days in the county jail. Further, he apologized to the court for his
 
 *1281
 
 error and noted that he had not previously missed a scheduled court date.
 

 On cross-examination he admitted he did not advise the female bailiff he had missed his scheduled court date the previous day, nor did he personally notify the sheriffs office of his failure. And, despite a prior history of speaking with the state attorney’s office regarding his case, he did not bring his failure to appear to its attention. He said he was scared.
 

 The State called a single witness, a male bailiff assigned to the courthouse. The bailiff testified to his understanding of the protocols to follow if a defendant were to advise a bailiff of a nonappearance. Training and procedure mandate the person be seized and a warrant obtained. He was not the bailiff Mr. Ingmire claimed he spoke with.
 

 Following this testimony, the State argued that there was no evidence that Mr. Ingmire was unable to attend court on the scheduled date and that the trial court was well familiar with the local procedures. The State sought a sentence of fifteen years’ incarceration. The trial court found that Mr. Ingmire had previously made numerous timely appearances in this case and that he was attempting to pay as much of the restitution before sentencing as he could. However, the trial court also found that Mr. Ingmire was advised and reminded of his court date and the possible penalty for nonappearance, that the court was familiar with policy and procedures triggered when a person advises that he failed to appear at the proper time, that the bailiff’s testimony was credible, and that Mr. Ingmire’s testimony was not credible. The court then imposed the State’s requested sentence of fifteen years’ incarceration, the maximum penalty provided by law for Mr. Ingmire’s second-degree felony.
 

 Analysis
 

 To prove that Mr. Ingmire violated a term of his plea agreement by failing to appear, the State was required to prove the violation by a preponderance of the evidence.
 
 See Neeld v. State,
 
 977 So.2d 740, 745 (Fla. 2d DCA 2008). However, “ ‘[w]here timely appearance for sentencing is made a condition of a plea agreement, a non-willful failure to appear will not vitiate the agreement and permit the trial court to impose some greater sentence.’”
 
 Robinson v. State,
 
 946 So.2d 565, 567 (Fla. 2d DCA 2006) (quoting
 
 Johnson v. State,
 
 501 So.2d 158, 160-61 (Fla. 3d DCA 1987)). The main issue before the trial court was a factual determination of whether Mr. Ingmire’s failure to appear was willful. Thus, our standard of review is limited. “If the trial court’s findings are supported by competent substantial evidence, we will not substitute our judgment for that of the trial court on questions of fact, the credibility of the witnesses, and the weight to be given to the evidence by the trial court.”
 
 State v. Pearce,
 
 994 So.2d 1094, 1099 (Fla.2008) (citing
 
 Blanco v. State,
 
 702 So.2d 1250, 1252 (Fla.1997));
 
 see also Parker v. State,
 
 3 So.3d 974 (Fla.2009) (same). “Competent substantial evidence is tantamount to legally sufficient evidence.”
 
 R.F. v. Fla. Dep’t of Children & Families,
 
 770 So.2d 1189, 1192 (Fla.2000).
 

 Because the State presented no evidence that even suggested the willfulness of Mr. Ingmire’s actions, we conclude the evidence presented at the hearing was legally insufficient to support the trial court’s conclusion. The State only presented the testimony of a male bailiff who explained the court’s procedures if, hypothetically, a criminal defendant were to inform a bailiff that he had missed a hearing. However, that bailiff also testified that he did not know whether Mr. Ingmire had spoken with a bailiff at all, let alone what they
 
 *1282
 
 might have discussed.
 
 [2]
 
 Consequently, the bailiffs testimony was not probative as to the issue at hand.
 

 Moreover, although the trial court found that Mr. Ingmire was not credible, the trial court made no such findings as to Mr. Ingmire’s uncle or his bail bondsman. Both witnesses verified Mr. Ingmire’s story — that his failure to appear was a mistake in reading the date on his paperwork, that he went to the bail bondsman’s office the day after he was required to be in court, and that he followed his bondsman’s instructions to the letter by going home, contacting the bondsman daily, and turning himself in as soon as a warrant issued.
 

 Additionally, the State offered no motive to explain why Mr. Ingmire would place his probationary sentence at risk by failing to appear, or why he would fail to appear after paying the substantial agreed amount of presentence restitution. There is no evidence suggesting he was hiding or sought to leave the area. Certainly, Mr. Ingmire can be criticized for not contacting the appropriate authority or for failing to immediately turn himself over to law enforcement, but the record incontrovertibly establishes that he attempted to follow what he thought was a proper and reasonable course of action.
 

 Even without Mr. Ingmire’s own testimony, which the trial court disbelieved, all of the relevant evidence established below is consistent with a person who simply erred and compounded the error through well-intended but improper action. There is an absence of positive evidence to establish willfulness. “[T]he circuit court cannot declare that the defendant violated the terms of his plea agreement in the absence of competent, substantial evidence to support that finding.”
 
 Neeld,
 
 977 So.2d at 745.
 

 We reverse and remand with instruction to sentence Mr. Ingmire according to the plea agreement with appropriate credit for time served.
 

 Reversed and remanded.
 

 WALLACE and KHOUZAM, JJ„ Concur.
 

 [1]
 

 . Up to this point Mr. Ingmire had represented himself.
 

 [2]
 

 . The only evidence to suggest there was any conversation between an unknown female bailiff and Mr. Ingmire came from Mr. Ing-mire. He testified that when he arrived at the court one day late, he spoke to a bailiff and learned his hearing was scheduled for the prior day. However, he specifically stated that he did not tell the bailiff he had missed the hearing. Regardless, we recognize that the trial court found Mr. Ingmire to not be credible and we are bound by that finding.