DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

CALVIN TERRELL BOLDEN, JR.,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

Nos. 2D2023-2262, 2D2023-2263
CONSOLIDATED

_____

April 23, 2025

Appeal from the Circuit Court for Hillsborough County; Mark Kiser,
Judge.

Blair Allen, Public Defender, and Kimberly Nolen Hopkins, Assistant
Public Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and Cerese Crawford
Taylor, Assistant Attorney General, Tampa, for Appellee.


PER CURIAM.

In this consolidated[1] appeal, Calvin Terrell Bolden, Jr., appeals

from his judgments and sentences imposed after entering into a plea

_____

[1] These appeals arise out of two cases that were negotiated and
resolved together pursuant to a global plea below. We consolidate them
for the purpose of this opinion. *See J.M.B. v. State*, 776 So. 2d 353, 354

agreement.  We affirm without prejudice to any right Mr. Bolden might have to file a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.

NORTHCUTT and SMITH, JJ., Concur.
LUCAS, J., Concurs specially with opinion.

LUCAS, Judge, Specially concurring.

I concur with affirming the judgments and sentences below, in which Mr. Bolden received a twenty-year prison sentence for delivering cocaine within 1000 feet of a park after breaching a court-imposed condition for delaying his sentencing.  *Cf. Quarterman v. State*, 527 So. 2d 1380 (Fla. 1988).  I write separately to express some misgivings about the expansive use of *Quarterman* agreements beyond what the *Quarterman* holding provided.

At a plea hearing on July 25, 2023, the State informed the trial court that it was offering Mr. Bolden a five-year sentence (three years being designated minimum-mandatory) as a global resolution to four pending criminal cases, including the cases at bar.  Mr. Bolden found this offer acceptable, agreed to enter an open plea, and asked the trial court if he could have a week to get his affairs in order before he was taken into custody.  The State had no objection to delaying his sentencing.

The court agreed to give Mr. Bolden two days of liberty before sentencing him.  Here is what the presiding judge stated:

> So I would accept that.  If he wants to plea here today, turn himself in Friday morning here in court. . . .  It would be a sentencing.  If he's late, if he fails to appear, *if he's been*

(Fla. 1st DCA 2001) ("Cases may also be consolidated for oral argument, issuance of an opinion, or both.").

*arrested* then that deal is off, he could be sentenced anywhere up to the max.

(Emphasis added.)[2]

Mr. Bolden's counsel raised no objection to any of the conditions the court announced. And Mr. Bolden stated that he understood what the court required and agreed to the conditions it had imposed.

On July 28, 2023, Mr. Bolden appeared, on time, for his sentencing. Unfortunately for him, in the days between his plea and his sentencing, he was arrested for battery in connection with a domestic dispute. Upon presentation of the criminal report affidavit, "the deal," such as it was, with the trial court was off. It doesn't matter that the State never filed a charge in connection with Mr. Bolden's arrest (or that the victim listed in the criminal report affidavit later recanted what she had told to law enforcement officers at the time of the arrest). Because Mr. Bolden had violated a term of his delayed sentencing agreement—he got arrested—the court imposed a significantly longer prison sentence than the five years Mr. Bolden and the State had agreed to just a couple of days before.[3] Counsel for Mr. Bolden asked the trial court to impose a "bottom of the guidelines" sentence (which, for all the cases, would have been 129 months), but counsel did not dispute the sufficiency of the

_____

[2] You can probably guess what's coming based on the italics.

[3] Upon receiving his sentence, Mr. Bolden immediately told the trial court that he wished to withdraw his plea, to which the court appropriately responded that he would need to discuss that with his attorney. Mr. Bolden's defense counsel never filed a motion to withdraw plea on Mr. Bolden's behalf. Mr. Bolden subsequently filed a pro se motion to withdraw his plea, but solely on the grounds that his attorney allegedly coerced him into accepting his plea deal and that there was a purported conflict of interest in representation.

3

evidence presented or the propriety of imposing a longer sentence based solely on Mr. Bolden's arrest.

Mr. Bolden's appeal, which centers on fundamental error in sentencing and inapposite cases involving violations of probation, has to be rejected. The conditions of his *Quarterman* agreement, and the unchallenged finding that he had violated it, effectively foreclose appellate relief. That troubles me because, whatever his faults, Mr. Bolden honored his *Quarterman* agreement, if the scope of that agreement were properly construed.

In *Neeld v. State*, 977 So. 2d 740 (Fla. 2d DCA 2008), our court distinguished the features of a "classic *Quarterman* agreement," which only concerns the defendant's appearance at a later sentencing hearing, and additional conditions while the defendant is at liberty before being taken into custody, such as those we have here. We explained:

> For more than twenty years, and particularly since the practice was approved by the Florida Supreme Court in *Quarterman,* 527 So. 2d 1380, trial courts in Florida have been granting furloughs between the plea hearing and the sentencing hearing for defendants who can reasonably be expected to obey the law while released and can be relied upon to voluntarily appear for sentencing. . . .
>
> The plea agreement under which the defendant is released is essentially a civil contract. In consideration for the privilege to remain free, the defendant agrees that if he does not appear for sentencing at the agreed upon time and place, the trial court can sentence the defendant to any lawful sentence even if it is a sentence in excess of the sentence specified in the negotiated plea agreement. . . .
>
> . . . .
>
> If a defendant does not fulfill a *Quarterman* agreement, his or her failure to appear is obvious. At the time and place of sentencing, when the case is called, the defendant is not present. This occurs in the same court of record where the contract was created. . . .

4

In contrast, when a defendant agrees to stay out of "trouble" or avoid arrest or conviction in exchange for a furlough between the plea hearing and the sentencing hearing, the act that is a breach of contract does not occur in a public courtroom. Such an action is more comparable to an act of indirect criminal contempt. *See* Fla. R. Crim. P. 3.840.

*Id.* at 743–44.

Equating *Quarterman* presentencing release conditions to civil contracts was perhaps an imperfect comparison,[4] but *Neeld*'s broader point remains salient: there's a difference in kind between conditions such as the one the trial court imposed in Mr. Bolden's case (don't get arrested before your sentencing), which are categorically distinct from what the Florida Supreme Court authorized in *Quarterman* (show up on time for your sentencing). *Quarterman* never addressed, and therefore had nothing to say, about any "extra" conditions apart from the defendant's timely appearance at a sentencing hearing.

---

[4] There certainly wasn't much arm's length negotiation between Mr. Bolden, the State, and the court about his two-day furlough, which only came up after the parameters of the plea deal had been reached. And the contract analogy has always faltered at the point of remedies because only a "willful" breach of a *Quarterman* agreement will permit the trial court to impose a greater sentence. *See Robinson v. State*, 946 So. 2d 565, 567 (Fla. 2d DCA 2006) (quoting *Johnson v. State*, 501 So. 2d 158, 160–61 (Fla. 3d DCA 1987)); *accord* Restatement (Second) of Contracts § 235 (1981) ("When performance is due, however, anything short of full performance is a breach, even if the party who does not fully perform was not at fault and even if the defect in his performance was not substantial."). But I think what our court was driving at in *Neeld* was the idea that a *Quarterman* agreement, in some instances, can be considered a constituent part of a plea agreement, and plea agreements are generally construed under contract law principles. *See Small v. State*, 249 So. 3d 675, 676 (Fla. 2d DCA 2018) ("A plea agreement is a contract between a defendant and the State, to which ordinary rules of contract law apply." (citing *Churchill v. State*, 219 So. 3d 14, 18 (Fla. 2017))).

Moreover, the *Quarterman* court premised its holding that a presentencing furlough condition violation can justify a departure from a previously agreed upon sentence on the basis that the condition was, in fact, part of the plea agreement:

> In the instant case, departure was not only based on Quarterman's failure to appear but was also based on the plea agreement itself. Further, as noted by the district court, the conditions which Quarterman agreed to *were not imposed after the plea bargain had been accepted but were accepted as "an integral part of the bargain itself."* We agree with the court below that, *under these circumstances,* the plea bargain itself serves as a clear and convincing reason for departure . . . .

*Quarterman*, 527 So. 2d at 1382 (emphasis added) (citations omitted) (quoting *Quarterman v. State*, 506 So. 2d 50, 51 (Fla. 2d DCA 1987)).

In practice, some *Quarterman* agreements are indeed an "integral part" of an overall plea agreement. But many times, they're not. My review of the record suggests to me Mr. Bolden's *Quarterman* agreement was more like the latter, an issue that came up after the terms of his plea agreement had already been negotiated and, apparently, accepted by the court.[5]

All this is to say that *Quarterman*, properly construed, is more limited than how it's come to be applied in practice. *Quarterman* only spoke to presentencing release conditions that (1) were an integral part of a negotiated plea agreement and (2) concerned the defendant's timely appearance at a subsequent sentencing hearing. While I can certainly

---

[5] I think Judge Pratt had the right of it when he suggested we ought to think of *Quarterman* agreements as akin to "amendments" or a "proviso" to bargained-for plea agreements. *See Gore v. State*, 50 Fla. L. Weekly D218, D219 (Fla. 5th DCA Jan. 17, 2025) (Pratt, J., concurring). But his caveat, that the agreements "are *Quarterman*-compliant and enforceable" is critical. *Id.* To be "*Quarterman*-compliant," a *Quarterman* agreement must be an "integral part" of an underlying plea agreement.

understand the motivation to impose "extra" *Quarterman* conditions outside of that context, trial courts should perhaps be hesitant to do so.

_____

Opinion subject to revision prior to official publication.